MOREHOUSE, RESPONDENT, *v.* NORTHERN LAND CO.,
APPELLANT.

(No. 5,249.)

(Submitted June 1, 1923. Decided June 30, 1923.)

[216 Pac. 792.]

*Real Property—Vendor and Purchaser—Mortgage Foreclo-*
*sure — Defective Title — Oral Representations — Merger in*
*Deed — Fraud — Implied Findings — Bills of Exceptions —*
*Amendments—Extension of Time.*

Vendor and Purchaser—Covenant of Seisin—Deed—Defective Title—
Remedy.
 1.  While a purchaser of land under an executory contract of sale
 may demand a title clear of defects even in the absence of covenant
 of seisin, where a deed was to be delivered, the deed governs
 and the purchaser's only right to relief from defects or encum-
 brances depends upon the covenants for title which he has re-
 ceived, in the absence of fraud or actual or constructive eviction
 by the owner of the paramount title.

Same—Defective Title—Fraud—Evidence—Insufficiency.
 2.  In an action to foreclose a real estate mortgage defendant's
 contention that an oral promise of vendor's attorney that the
 alleged defective title would be made good was constructively
 fraudulent, *held*, not sustained by the evidence.

Same—Title—Examination by Purchaser Precludes Charge of Fraud.
 3.  Where a purchaser of land caused an examination of the title
 thereto to be made and could have ascertained an alleged defect
 in it, his reliance upon false representations made with relation
 thereto by the vendor's attorney was not a defense to an action
 to foreclose a mortgage for failure to pay balance of the pur-
 chase price.

Same—Deed Supersedes Oral Negotiations.
 4.  All oral negotiations relative to the covenant of seisin on a
 sale of land were superseded by the deed and a contemporaneous
 writing executed with relation thereto.

Foreclosure of Mortgages—Implied Findings.
 5.  Failure of the court in an equity case to make a particular
 finding is not reversible error, since any finding necessary will be
 implied.

Bill of Exceptions—Amendments—Extension of Time for Offering, Per-
missible.
 6.  Under section 9823, Revised Codes of 1921, the district court
 may grant a party additional time within which to offer addi-
 tional amendments to a proposed bill of exceptions.

*Appeal from District Court, Teton County; John J. Green,*
*Judge.*

[68 Mont. 96.]

ACTION by Annie C. Morehouse against the Northern Land Company. Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. Norris, Hurd & Rhoades* and *Messrs. Cole & Packer,* for Appellant, submitted a brief; *Mr. W. B. Rhoades* argued the cause orally.

In the deed plaintiff conveyed the land under a warranty that she would "forever warrant and defend all rights, title and interest in and to said premises," and the undisputed testimony is to the effect that the agent of the respondent, John W. Stanton, on more than one occasion stated to the appellant that the title was a good and marketable title, and that if any defects should be discovered therein the plaintiff would cure such defects and make such title good, upon which statements so made at such times the appellant relied and acted. At common law it was the rule: "A grantee of land cannot defeat the foreclosure of a mortgage given by him for the purchase money, on the ground of want or defect of title in the grantor while he remains in possession and has not been evicted by a paramount title, and where no fraud was practiced on him and it is not alleged that the grantor is insolvent, his remedy in such case being by an action on the covenants in his deed, but it is otherwise if there was a covenant of seisin in the deed, if the purchaser was defrauded, if he shows an eviction under a paramount title, or if the mortgage was not to become due and payable until the title was perfected in his grantor, in which case he may rely upon the condition precedent instead of the covenant of warranty." (27 Cyc. 1554.) In this action, it is the position of the appellant that there is a violation of the covenant of seisin, and that the respondent has practiced on the appellant constructive fraud, both of which take this case without the general rule and place it squarely within two of the exceptions thereto.

68 Mont.—7

"A covenant of seisin is now generally regarded as a covenant of title, and has been defined to be an assurance that the grantor has the very estate in quantity and quality which he purports to convey." (15 C. J. 1233.) *Corpus Juris* gives the rule of the United States as follows: "The usual covenants of title are covenants of seisin or right to convey, against encumbrances, for quiet enjoyment, and of warranty." (15 C. J. 1230.)

Cases in which it has been held that the defense of fraud and counterclaims by way of recoupment may be set up in defending the foreclosure of a purchase-money mortgage, and wherein the deed contained covenants of seisin and wherein fraud, either actual or constructive, was practiced in the transactions, are: *McConihe* v. *Fales,* 107 N. Y. 404, 14 N. E. 285; *Merritt* v. *Gouley,* 12 N. Y. Supp. 132; *Walker* v. *Wilson,* 13 Wis. 584; *Brandt* v. *Foster,* 5 Iowa, 286; *Hoak* v. *Sullivan,* 69 Misc. Rep. 429, 125 N. Y. Supp. 835; *Lowery* v. *Hurd,* 7 Minn. 282; see, also, *Como Orchard Land Co.* v. *Markham,* 54 Mont. 438.

*Mr. John W. Stanton,* for Respondent, submitted a brief and argued the cause orally.

MR. COMMISSIONER BENNETT prepared the opinion for the court.

In August, 1912, Annie C. Morehouse, plaintiff herein, and Nicholas O. Tuttle gave an option to purchase certain lands in Teton county to Thomas O. Larson. Defendant, Northern Land Company, a corporation, succeeded to the option. Subsequently, in August, 1913, after a protracted series of negotiations, a deed was executed and delivered, whereby plaintiff and Tuttle did "grant, bargain, sell, convey, warrant, and confirm," unto defendant the land covered by the option. The deed also contained the covenant providing that the grantors "will forever warrant and defend all rights, title, and interest in and to the said premises and the quiet and peaceable possession thereof unto the said party of the second part, its suc-

cessors, and assigns against the acts and deeds of the said parties of the first part and all and every person and persons whomsoever lawfully claiming or to claim the same. * * * ''
This was the only covenant in the deed. Contemporaneously with the execution and delivery of the deed, defendant made, executed and delivered to plaintiff and Tuttle a series of notes and a mortgage on the same premises to secure the payment of a balance of the purchase price. Prior to the delivery of the deed and mortgage, an action had been commenced against plaintiff and Tuttle involving the title to a portion of the property. An abstract of title had been secured, and defendant had caused it to be examined by an attorney and had been advised as to the condition of the title which was disclosed by the abstract. During all the negotiations prior to the delivery of the deed, defendant had either been represented or was accompanied by an attorney—one of his attorneys of record herein. In particular was this so on the day the deed and mortgage were finally delivered. On this day a collateral written agreement was entered into between plaintiff and Tuttle on the one hand and defendant on the other, providing that, in the event the action then pending against plaintiff and Tuttle should be determined adversely to plaintiff and her co-owner, they would reimburse defendant for all the land which the court determined was not owned by them.

Some time in 1914 the defendant obtained possession of the premises and is now in the possession thereof. Defendant's proof discloses that plaintiff's attorney, prior to the delivery of the deed, stated orally that the title was good and that any defects would be remedied. Defendant claims that reliance was placed on these statements. Tuttle was paid off in full, and the major part of the amount due plaintiff was paid. In the meantime an action to quiet title to the lands had been commenced by plaintiff. This action was pending at the time the last note belonging to plaintiff fell due. Defendant refused to pay as long as this action was pending. In some manner which does not definitely appear, this action was disposed of, but in the meantime, defendant having discovered

what was, according to its attorneys, a defect in a decree of distribution of the estate of plaintiff's husband, through which the title passed, refused to make the last payment on that ground. It is claimed that the records did not disclose the plaintiff to be the owner of a greater interest in the premises than one-half, that Tuttle had only had a one-fourth interest, and that therefore there was a defect as to a one-fourth interest. Upon the refusal of defendant to pay, this action was commenced to foreclose the mortgage for the unpaid balance. Defendant answered, setting up a defense in effect that the mortgage was a purchase-money mortgage; that the plaintiff had covenanted to convey a perfect title; that it was induced to accept the deed by the assurance of plaintiff's attorney that the title was perfect; and that in fact the title was defective. Counterclaims were also interposed on the same facts. Prior to the trial of this action, such steps had been taken by plaintiff that defendant had become satisfied with the title and made a tender of the amount of the note and interest to its due date. This tender was not accepted by plaintiff. The case was tried on the theory that the only question involved was whether the defendant was liable for the interest since the date the note matured and for attorney's fees upon foreclosure as provided in the note and mortgage. The only answer which is included in the record was an amended one filed after testimony had been taken. The trial court found in favor of plaintiff, and a judgment and decree of foreclosure was entered. The appeal is from the judgment.

The trial court found that the plaintiff was, on July 16, 1913, the owner in fee of an undivided three-fourths interest in the premises involved. Error is predicated upon this finding. Defendant also specifies as error the making and entry of judgment for plaintiff, for the reason that it is contended the proof shows that the plaintiff was not the record owner of an undivided three-fourths interest in the lands, that plaintiff had covenanted to give perfect title, and that defendant was induced to accept the deed by the statements of plaintiff's attorney that the title was good, when in fact it was not and

the further statement that all defects would be cured. It is also contended that the court erred in disregarding the counterclaim set up in support of which testimony was adduced.

In our opinion the judgment was correct. The rule which
[1] controls this case is found stated in Rawle on Covenants for Title, page 612 *et seq.* After remarking on the distinction between the rules which govern the relation of vendor and purchaser before and after the execution of the deed, and pointing out that a purchaser under an executory contract of sale may demand a title clear of defects, usually even in the absence of specific covenants therefor, the author says: "But when the deed of conveyance has been delivered, a different rule applies. The contract is then executed, and any inconsistencies between its original terms and those of the deed are, in general, to be explained and governed solely by the latter, into which the former is merged, and by which the parties are thereafter to be bound, and the purchaser's only right to relief, either at law or in equity, from defects or encumbrances, depends, in the absence of fraud, solely upon the covenants for title which he has received. * * * And it is one of the most settled principles of the law of vendor and purchaser that a purchaser who has received no covenants which cover the defect or encumbrance, can neither detain the purchase money, nor recover it back, if already paid. Unless there has been fraud, he is absolutely without relief, as against his vendor, either at law or in equity."

Before proceeding further, we point out that this court, in *Green* v. *Baker*, 66 Mont. 568, 214 Pac. 88, held that a deed which is not distinguishable from the one at bar in legal effect did not contain a covenant of seisin, and that an action was not maintainable based on defects in the title, without allegations and proof of an eviction, either actual or constructive, by the owner of the paramount title. The record in the instant case is barren of any such allegation or proof.

It is argued, however, that the statements of plaintiff's
[2] counsel that the title was good and that all defects would

be cured, which it is contended were contrary to the fact, constituted constructive fraud, and that, since defendant relied thereon and accepted the deed because thereof, the facts bring the case within the exception to the general rule. There are two answers to this argument.

In the first place, the testimony discloses that the only statement which was relied on was the attorney's oral promise to make the title good. If by any construction it can be said that defendant relies on subdivision 4 of section 7480, Revised Codes of 1921, providing that "a promise made without any intention of performing it" is actual fraud, the facts do not bring the case within that rule, for the plaintiff did proceed to do the things which defendant insists she promised through her attorney to do. Certainly there is no proof that a promise was made without any intention of performing it, and in fact the allegations of the answer do not permit of such contention being made. Furthermore, it is apparent that these conversations between plaintiff's attorney and the officers of defendant company had reference to the suit to quiet title which was then pending against plaintiff and her co-owner, and nothing more. The negotiations culminated in the collateral written contract by which it was agreed that, in the event the result of that action was to determine that plaintiff and her co-owner were not the owners of the lands involved in that action, defendant would be reimbursed.

In the second place, the proof discloses that the defendant [3] had caused an examination of the title to be made and could have learned of the defects if it did not already know them. The statement of this court in *Grinrod* v. *Anglo-American Bond Co.*, 34 Mont. 169, 85 Pac. 891, is in point here: "When it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth or falsity of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint."

In discussing this question of fraud we have assumed that, if the other elements were present, the statement of opinion by the attorney as to the title would have been sufficient to bring it within the definition of fraud. Of the soundness of this conclusion we have some doubt, but we express no opinion thereon.

While the question was not discussed by counsel we deem it [4] proper to point out that under the provisions of sections 7520 and 10517, Revised Codes of 1921, all oral negotiations were superseded by both the deed and the contemporaneous written contract, and no reliance can be placed thereon as covenants of seisin.

In the light of what has been said, the question as to the nature of the defect in the decree of distribution becomes immaterial.

The same answer may be made to the specification of error based upon the court's finding that the plaintiff was on July 16, 1913, the owner in fee of an undivided three-fourths interest in the premises involved.

What has been said also disposes of the proposition that the [5] court made no finding upon the counterclaims. In fact it applies to the counterclaim with particular force, since we are doubtful whether in any event the facts alleged were a defense to the action. In our opinion, assuming the correctness of defendant's other theories, the remedy was either by way of counterclaim or to rescind the contract. This latter remedy was never attempted, nor could it have been successfully invoked under the facts. There was therefore no reversible error committed in not making any finding upon the counterclaims. Any necessary findings pertinent thereto will be implied.

We have examined the specification as to the correctness of the court's action in granting plaintiff additional time within which to offer amendments to the proposed bill of exceptions. [6] Under the provisions of section 9823, Revised Codes of 1921, we think the trial court had the power to extend the time. Possibly the same limitations as are provided by sec-

tion 9390 as to proposing bills of exceptions would apply to amendments, but, since it would be *obiter* herein, we express no opinion as to that.

We recommend that the judgment be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

.*Affirmed.*