No. 93-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ROCKY MOUNTAIN TIMBERLANDS, INC.
a Montana Corporation,

    Plaintiff and Appellant,

    v.

BETTY T. LUND, as County Clerk
and Recorder of Ravalli County,
Montana,

    Defendant and Respondent.



FILED

JUL 12 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Twenty-First Judicial District,
In and for the County of Ravalli,
The Honorable Jeffrey H. Langton, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        John J. Jardine, Jardine & Fehlig, Whitehall,
Montana; Patrick Dougherty, Worden, Thane & Haines,
Missoula, Montana

    For Respondent:

        George H. Corn, Ravalli County Attorney, Gerald D.
Williams, Deputy County Attorney, Hamilton, Montana


Submitted on Briefs:  April 7, 1994

Decided:  July 12, 1994

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a denial of writ of mandamus by the Twenty-First Judicial District Court, Ravalli County. We affirm.

We consider the following issues on appeal:

I. Did the District Court err in determining that a landowner cannot legally divide a large parcel of land into smaller parcels by executing a deed in which the grantor and the grantee are the same party?

II. Did the District Court err by determining that the Clerk and Recorder properly refused to record the deed in question and, therefore, a writ of mandamus was not appropriate?

The facts of this case are not disputed. Rocky Mountain Timberlands, Inc. (RMT) is a Montana corporation located in Bozeman. It is engaged in the acquisition and subdivision of Montana land which is then marketed nationwide.

RMT bought several large tracts of land totalling 580 acres in rural Montana, located about one mile east of the town of Stevensville in Ravalli County. On February 25, 1993, RMT tendered 27 quitclaim deeds to the Ravalli County Clerk and Recorder, Betty T. Lund. The 27 deeds were all similar and had RMT listed as both grantor and grantee on each one. The deeds purport to quitclaim a 1/32nd part of a government section (a 20-acre tract) of the aforementioned 580 acres of land purchased by RMT. Included in the 27 deeds recorded on February 25, 1993, was a deed describing the S1/2,NW1/4,SE1/4 of Section 22, Township 9 North, Range 19 West,

P.M.M. (20 acres) as an unsegregated part of the SE1/4 of Section 22.

Following her filing of these 27 deeds, the Clerk sought a legal opinion from the county attorney on the advisability of recording these 27 deeds in which the grantor and grantee were the same entity. The county attorney advised the Clerk that, in his opinion, these deeds were ineffective to pass property and, in essence, were void instruments unless the deeds had modified the nature of the interests held by the grantor and grantee.

On April 6, 1993, the legislature changed certain definitions within the statutes pertaining to the Subdivision and Platting Act. The amendments, Chapter 272, Laws of Montana, 1993, define "subdivision" as "a division of land or land so divided which creates one or more parcels containing less than 160 acres. . ." This new limit of 160 acres within this definition effectively means that a plat must be filed of record before title to subdivided ground--any piece smaller than the 160 acres--can be sold or transferred. The prior statutory limit was 20 acres.

On April 20, 1993, fourteen days after the new amendments to the Act went into effect, RMT made a deed conveying the S1/2,NW1/4,SE1/4 of Section 22, T9N, R19W, to John Jardine. RMT attempted to have the deed recorded on April 22, 1993, but the Clerk refused to accept it on the basis that it was not in compliance with the 1993 Legislature's changes to the Montana Subdivision and Platting Act (the Act), §§76-3-101, et.seq., M.C.A. The Clerk took the position that because the underlying 20-acre

3

deed purporting to convey the segregated parcel to RMT did not meet the requirements of the Act, any subsequent deed purporting to convey the parcel would first have to fall into compliance with the Act. Thus, because the 20 acre tract had not been surveyed, it could not be recorded.

On May 24, 1993, RMT petitioned the Ravalli County District Court for a Writ of Mandamus directed to the County Clerk. The Clerk appeared before the District Court on June 17, 1993, and contested the Writ. The parties stipulated to the facts of the case and submitted the case to the court on August 12, 1993, without a hearing.

The court issued its Memorandum and Judgment on August 27, 1993, concluding that RMT's prior 27 quitclaim deeds to itself were void and inoperative for any purpose whatsoever, including the division of RMT's lands into 20-acre parcels, and that RMT's subsequent warranty deed failed to comply with Montana's Subdivision Act as amended by the 1993 Legislature.

The District Court quashed, vacated, and set aside the Writ of Mandamus and affirmed the Clerk's refusal to record RMT's subsequent warranty deed. RMT appeals the August 27, 1993 judgment of the District Court.

### Standard of Review

Both issues which we here review concern matters of legal interpretation. We review the district courts' legal interpretations as to whether they are correct. Steer Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

4

I.

Did the District Court err in determining that a landowner cannot legally divide a large parcel of land into smaller parcels by executing a deed in which the grantor and the grantee are the same party?

Appellant argues that the common law rule prohibiting the grantor and grantee of a land conveyance from being the same person is not followed in Montana because the legislature has made conveyancing subject to statutes. The appellant further argues that our statutes do not forbid the grantor and grantee being the same person. According to appellant, Montana has eliminated the requirement that the grantor and grantee in any land conveyance must be different persons, refusing to require a "strawman" in situations where land is conveyed by one person to himself or herself.

Respondents argue that the conveyancing law in Montana is statutory and the statutes do not abrogate the common law but incorporate it by reference. The District Court pointed out that the English common law held that a man cannot make a conveyance to himself. In further considering this aspect, the District Court determined that the cases involving establishment or severance of a joint tenancy are not applicable because a joint tenancy involves a conveyance of a different, or lesser, estate than the original one.

We do not consider common law concerning joint tenants because resolution of this issue pivots on purely statutory grounds. "The

5

statutes establish the law of this state. . ." Section 1-2-103, MCA. It is undisputed, here, that RMT's whole purpose in recording the 27 deeds was to divide its 580 acre tract into smaller parcels minimally large enough to avoid the survey and platting requirements of the Subdivision and Platting Act then in effect. The Montana Subdivision and Platting Act in effect at the time of the original filing of the 27 alleged deeds is specific as to the ways in which land in this state can be divided:

> (3) **"Division of land"** means the segregation of one or more parcels of land from a larger tract held in single or undivided ownership by transferring or contracting to transfer title to or possession of a portion of the tract or properly filing a certificate of survey or subdivision plat establishing the identity of the segregated parcels pursuant to this chapter. (Emphasis added.)

Section 76-3-103(3), MCA (1991).

Since 1895, the word "transfer" in connection with **any conveyance of** real property has been defined by Montana statute as follows:

> **Transfer defined.** Transfer is an act of the parties or of the law by which the title to property is conveyed from one living person to another. (Emphasis added.)

Section 70-1-501, MCA (1991). Under the statute, a "transfer" of land requires a conveyance of title from one person to another. If the persons are the same, then a "transfer" does not occur. If there is no "transfer," then there is no division of land under § 76-3-103(3), MCA.

We affirm the holding of the District Court that a landowner cannot divide a large parcel of land into smaller parcels by

6

executing a deed in which the grantor and grantee are the same party.

## II.

Did the District Court err by determining that the Clerk and Recorder properly refused to record the deed in question and, therefore, a writ of mandamus was not appropriate?

Appellant argues that the Clerk and Recorder had no discretion in recording the deed. According to appellant, the Clerk was under a statutory duty to record the deed so long as its fee was paid and it met statutory requirements.

Respondent contends that the Clerk was under a legal duty not to accept an improper deed.

The District Court found that the Clerk and Recorder had no mandatory duty to record every document presented to her office that is labeled a "deed." Clerks are required only to record documents "authorized by law to be recorded." Section 7-4-2617(1), MCA. The court determined that the legislative intent behind the statutes concerning the Clerk and Recorders' duties is that judgments without affect on the title of or possession of real property are not necessarily recordable. Section 70-21-201(1), MCA. According to the court, the entire recording system is built upon the notion of notice of ownership to property. Therefore, it serves no purpose to have a Clerk record an erroneous deed because such action projects wrong information. A Clerk may refuse to record a deed if the Clerk has legal justification to do so. We agree.

7

The statute that covers the general procedures of the Clerk and Recorder to record documents states in part:

> **Procedure to record documents.** (1) When any instrument, paper, or notice <u>authorized by law to be recorded</u> is deposited for record in the office of the county clerk, as ex officio recorder, and accompanied by the required fee, he <u>must</u> endorse upon the same the time it was received, noting the year, month, day, hour, and minute of its reception, and the reception of the instrument must be immediately entered in the county clerk and recorder's reception book. (Emphasis added.)

Section 7-4-2617(1), MCA. This statute puts a caveat onto the mandatory duty of a clerk: the paper filed must be authorized by law. When a paper is not authorized by law, the statute does not hold the clerk to the requirement.

This interpretation is borne out by a more specific directive within the Montana Subdivision and Platting Act concerning clerks and recorders:

> **Restrictions on recording instruments relating to land subject to surveying requirements.** (1) Except as provided in the subsection (2), the county clerk and recorder of any county may not record any instrument which purports to transfer title to or possession of a parcel or tract of land which is required to be surveyed by this chapter unless the required certificate of survey or subdivision plat has been filed with the clerk and recorder and the instrument of transfer describes the parcel or tract by reference to the filed certificate or plat.

Section 76-3-302(1), MCA. We have interpreted this statute to mean that the clerk and recorder has a mandatory duty not to accept and record an otherwise proper deed if it fails to comply with the survey requirement. Huttinga v. Pringle (1983), 205 Mont. 482, 668 P.2d 1068. This clerk responsibility is in line with the general

8

purpose of the Act in regulating subdivisions on a local level. Section 76-3-102, MCA.

A former case presents the situation in which a smaller parcel of land had been segregated from the original tract and consisted of acreage less than the then required limit for suspension of a survey. See McDonald v. Jones (1993), 258 Mont. 211, 852 P.2d 588. The Clerk in McDonald did record the deed without having the statutorily required plat filed of record. We determined that the Clerk should not have recorded the deed because it did not have a plat filed of record and thus did not meet the requirements of the Act. McDonald, 252 Mont. at 215, 858 P.2d at 591.

In the present case, the Clerk recorded the original 27 deeds and then sought an answer to her question concerning whether such deeds were valid. Upon discovering that they were not valid and that the 27 pieces of paper alleged to be deeds had no effect at all, the Clerk subsequently refused to accept for filing and record the ensuing 20-acre deed because she did not have a statutorily required plat filed of record as required by the Act. The statute in effect at the time of the attempted transfer of the 20-acre deed required that any piece of property less than 160 acres must have a plat or survey filed of record before the clerk was "required" to record the deed. The Clerk properly refused to record the 20-acre deed because the original 27 deeds from RMT to RMT had no effect and thus, the ensuing 20-acre deed to Jardine was invalid.

We hold that the District Court did not err by determining that the Clerk and Recorder properly refused to record the deed in question.

We further hold that because the Clerk performed her official duties properly, the court did not err in refusing to issue a writ of mandamus.  Section 27-26-102, MCA.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

July 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John J. Jardine, Esq.
JARDINE & FEHLIG
P.O. Box 488
Whitehall, MT 59759

Patrick Dougherty, Esq.
WORDEN, THANE & HAINES, P.C.
P.O. Box 4747
Missoula, MT 59806

George H. Corn, County Attorney
Gerald D. Williams, Deputy Attorney
Courthouse Box 5008
Hamilton, MT 59840

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy